[Cite as *State v. Stringer*, 2021-Ohio-2608.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29069 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1938 |
| | : | |
| DAVID RAY STRINGER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of July, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

TRAVIS KANE, Atty. Reg. No. 0088191, 130 West Second Street, Suite 460, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, David Ray Stringer, appeals from a judgment of the Montgomery County Court of Common Pleas revoking his community control sanctions for an aggravated burglary conviction. In support of his appeal, Stringer claims that the trial court erred by relying solely on hearsay evidence to conclude that he violated the terms of his community control. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On September 4, 2020, Stringer pled guilty to one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree, and the trial court sentenced him to a term of community control sanctions not to exceed five years. As conditions of his community control, Stringer was required to refrain from violating any law and from having any contact with the victims of the aggravated burglary, including the mother of his children, K.S. Stringer was also required to abide by a daily curfew of 8 p.m. to 6 a.m. and to be present at court on December 30, 2020, for a status report hearing.

{¶ 3} On January 19, 2021, Stringer's probation officer filed a notice of community control violation asserting that Stringer had violated all the aforementioned conditions of his community control. On January 21, 2021, Stringer acknowledged receipt of the violation notice, waived a probable cause hearing, and denied the community control violations alleged in the notice. The trial court then held a revocation hearing on February 9, 2021.

{¶ 4} At the revocation hearing, the State presented testimony from Stringer's

probation officer, Barthelo Cambarare. Cambarare testified regarding the conditions of Stringer's community control and confirmed that he went over the conditions with Stringer at the beginning of Stringer's community control term. Cambarare also testified that Stringer signed a form listing the conditions, which the State submitted into evidence as State's Exhibit 1. Cambarare further testified that Stringer was initially compliant with all the conditions of his supervision until Stringer had new criminal charges filed against him on December 15, 2020. Cambarare testified that he obtained the corresponding police report and determined that the charges stemmed from an incident in which K.S. was the alleged victim. Based on the allegations in the police report, Cambarare declared Stringer an absconder and filed the aforementioned notice of community control violation.

{¶ 5} The State also presented testimony from Montgomery County Sheriff's Deputy Tori Bargo. Dep. Bargo testified that at 9:54 p.m. on December 15, 2020, she was dispatched to K.S.'s residence on a report of a domestic dispute. Dep. Bargo testified that she had previously responded to K.S.'s residence on multiple occasions and was familiar with K.S. and Stringer, given their history of domestic disputes.

{¶ 6} Dep. Bargo testified that when she responded to K.S.'s residence, K.S. was crying and was "very worked up" and "very excited." Trans. (Feb. 9, 2021), p. 22. Dep. Bargo also testified that K.S. was "ranting and raving and pacing." *Id*. Dep. Bargo further testified that K.S. was usually upset when she responded to K.S.'s residence, but that K.S. was "a little bit more escalated" during the December 15th encounter. *Id*.

{¶ 7} Dep. Bargo testified that upon making contact with K.S., K.S. reported that she had accidently left the back door to her residence unlocked after having a pizza delivered. K.S. reported that while she and her boyfriend were in her bedroom eating

pizza, Stringer presumably entered her residence through the unlocked back door, came into her bedroom, and immediately started punching her in the mouth approximately four times. K.S. reported that she was able to run out of the bedroom when her boyfriend intervened, but that Stringer followed her out of the bedroom and began to pull her hair in the living room. K.S reported that her boyfriend and Stringer then got into a physical altercation during which Stringer put her boyfriend in a headlock. K.S. further reported that Stringer took her and her daughter's cell phones when they attempted to call 9-1-1.

{¶ 8} Stringer's trial counsel objected to Dep. Bargo testifying about what K.S. had reported to her on grounds that it was hearsay. The trial court, however, advised that the rules of evidence did not apply to revocation hearings and overruled the objection. Dep. Bargo then testified that she spoke with K.S.'s boyfriend separately and that the version of events he provided was consistent with what K.S. had reported. Dep. Bargo also spoke to Stringer and K.S.'s two children. Dep. Bargo testified that their daughter indicated she was upset that Stringer had taken her cell phone.

{¶ 9} Continuing, Dep. Bargo testified that she personally observed pizza boxes in K.S.'s bedroom as well as a dresser barricading the bedroom door. Dep. Bargo testified that K.S. had reported moving the dresser in front of the door to protect herself and the children from Stringer. Dep. Bargo also personally observed a hole in the living room wall and a living room decoration that had been knocked down. Dep. Bargo further observed redness on K.S.'s face and a laceration on K.S.'s lower lip that was bleeding.

{¶ 10} At the close of the revocation hearing, the trial court asked the parties whether there was any objection to providing the court with the photographs of K.S.'s injuries and the condition of K.S.'s residence following the incident with Stringer. Both

parties found this acceptable and the photographs were provided to the trial court and admitted into evidence.

{¶ 11} Following the revocation hearing, the trial court found that there was substantial evidence indicating that: (1) Stringer had contact with K.S on December 15, 2020; (2) the contact with K.S. occurred after Stringer's curfew; and (3) Stringer had been charged with new criminal offenses. The trial court also took judicial notice of the fact that Stringer had failed to appear for his status report hearing on December 30, 2020. Based on these findings, the trial court determined that Stringer had violated the conditions of his community control. As a result of the violations, the trial court revoked Stringer's community control and sentenced him to an indefinite term of three to four and a half years in prison.

{¶ 12} Stringer now appeals from the trial court's judgment revoking his community control and sentencing him to prison, raising one assignment of error for review.

**Assignment of Error**

{¶ 13} Under his sole assignment of error, Stringer contends that the trial court erred by relying solely on hearsay evidence to conclude that he violated the terms of his community control sanctions. Upon review, we find that Stringer's argument fails for multiple reasons.

{¶ 14} As a preliminary matter, we note that appellate courts "review the trial court's decision to revoke a defendant's community control for an abuse of discretion." *State v. Brandon*, 2d Dist. Montgomery No. 23336, 2010-Ohio-1902, ¶ 16, citing *State v. Brown*, 2d Dist. Montgomery No. 22467, 2008-Ohio-4920, ¶ 9. Whether hearsay

evidence is sufficiently trustworthy to be worth considering during a revocation hearing lies within the sound discretion of the trial court. *State v. Picklesimer*, 2d Dist. Greene No. 06-CA-118, 2007-Ohio-5758, ¶ 58. A trial court abuses its discretion if no sound reasoning process supports the court's decision. *Id.* at ¶ 28, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 15} Under the Ohio Rules of Evidence, hearsay evidence is not admissible except as otherwise provided by law or the rules of evidence. Evid.R. 802. However, it is well-established that community control revocation hearings are not subject to the rules of evidence and thus allow for the admission of hearsay. *Brandon* at ¶ 19, citing *State v. Dunning*, 2d Dist. Greene No. 08-CA-07, 2009-Ohio-691, ¶ 10. This is because a " 'revocation hearing is an informal proceeding, not a criminal trial[.]' " *State v. McDargh*, 2d Dist. Clark No. 2015-CA-27, 2016-Ohio-1132, ¶ 12, quoting *Columbus v. Bickel,* 77 Ohio App.3d 26, 36, 601 N.E.2d 61 (10th Dist.1991), citing *State v. Miller*, 42 Ohio St.2d 102, 106, 326 N.E.2d 259 (1975). During revocation hearings, " 'the trier of fact should be able to consider any reliable and relevant evidence to determine whether the [defendant] has violated the conditions of his [supervision].' " *Id.*

{¶ 16} "Nevertheless, in some circumstances, the admission of hearsay evidence at a revocation hearing can deny the defendant his due process right to confront and cross-examine adverse witnesses." *Brandon* at ¶ 19, citing *Dunning* at ¶ 10. For example, " '[t]he introduction of hearsay evidence into a revocation hearing is reversible error when that evidence is the only evidence presented and is crucial to a determination of a probation violation.' " *McDargh* at ¶ 13, quoting *State v. Ryan*, 3d Dist. Union No.

14-06-55, 2007-Ohio-4743, ¶ 9, citing *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675 (6th Dist.).

{¶ 17} In this case, Stringer claims that the trial court's decision revoking his community control must be vacated because the decision was based solely on Dep. Bargo's hearsay testimony in which Dep. Bargo described the incident in question as it was reported to her by K.S. This argument lacks merit because the record indicates that the trial court also considered photographs of K.S.'s injuries and the disheveled condition of K.S.'s residence following the incident with Stringer. In addition, Dep. Bargo testified regarding her personal observations of the scene which corroborated K.S.'s allegations. The trial court also took judicial notice of the fact that Stringer had failed to appear before the court for a status hearing on December 30, 2020, which was a condition of community control that the court found Stringer had violated. Based on the foregoing, it is clear that the trial court did not revoke Stringer's community control based solely on Dep. Bargo's hearsay testimony.

{¶ 18} Even if the trial court had relied solely on Dep. Bargo's hearsay testimony, and even if the rules of evidence applied to revocation hearings, the trial court's decision to revoke Stringer's community control would still not have been reversible error. This is because the hearsay statements in question are an admissible form of hearsay known as an "excited utterance." Evid.R. 803(2). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* "For a statement to be admissible as an excited utterance, four prerequisites must be satisfied: (1) the occurrence of an event startling enough to produce a nervous excitement in the declarant; (2) a statement made

while still under the stress of excitement caused by the event; (3) a statement related to the startling event; and (4) the declarant's personal observation of the startling event." *State v. Abner*, 2d Dist. Montgomery No. 20661, 2006-Ohio-4510, ¶ 69, citing *State v. Taylor*, 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316 (1993); *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166.

{¶ 19} Upon review, we find that Dep. Bargo's testimony about what K.S. reported satisfied all four requirements of the excited utterance hearsay exception. With respect to the first requirement, we find that Stringer's act of breaking into K.S.'s residence, punching K.S. in the mouth four times, chasing K.S., pulling K.S.'s hair, and fighting with K.S.'s boyfriend was startling enough to produce nervous excitement in K.S. With respect to the second requirement, Dep. Bargo testified that K.S. was crying and "very worked up" and "very excited" when she spoke with K.S. Trans. (Feb. 9, 2021), p. 22. Dep. Bargo also testified that K.S. was "ranting and raving and pacing" and noted that K.S. was "a little bit more escalated" than usual. *Id.* This testimony sufficiently indicated that K.S. was still under the stress of excitement from the incident with Stringer when K.S. reported the incident to Dep. Bargo.

{¶ 20} The third and fourth requirements of the excited utterance hearsay exception are also met since K.S.'s statements to Dep. Bargo concerned the startling event with Stringer and since K.S was the victim and thus personally observed the startling event. Therefore, because all four prerequisites were satisfied, the hearsay statements testified to by Dep. Bargo would have been admissible even if the rules of evidence applied to Stringer's revocation hearing.

{¶ 21} For the foregoing reasons, Stringer's sole assignment of error is overruled.

## Conclusion

{¶ 22} The judgment of the trial court revoking Stringer's community control sanctions is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
Travis Kane
Hon. Mary E. Montgomery